IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL LEWIS, | : | CIVIL ACTION |
| | : | NO. 07-3701 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARRIOTT INTERNATIONAL, | : | |
| INC., | : | |
| | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    DECEMBER 19, 2007

I.  BACKGROUND

        Plaintiff Carl Lewis brings this suit against Defendant
Marriott International, Inc. ("Marriott") for false advertising
under the Lanham Act and unauthorized use of his name under
Pennsylvania statutory and common law.  Lewis was the executive
chef at the Downtown Courtyard by Marriott in Philadelphia until
he left in 2005 to start a private catering business.  Lewis
alleges that after his departure, and contrary to his expressed
intent, Marriott continued to use his name in materials used to
sell wedding packages.  Lewis seeks compensatory and punitive
damages, injunctive relief, and attorney's fees.  Before the
Court is Marriott's motion to dismiss the complaint.

II.  DISCUSSION

            Lewis challenges Marriott's use of his name with four
causes of action: 1) false advertising in violation of the Lanham
Act, 15 U.S.C. § 1125; 2) unauthorized use of name in violation
of 42 Pa. Cons. Stat. § 8316; 3) misappropriation of right of
publicity; and 4) invasion of privacy by misappropriation of
name.  Marriott moves to dismiss all four counts.


    A.  Legal Standard

            In deciding a motion to dismiss for failure to state a
claim upon which relief can be granted, the Court must "accept as
true all allegations in the complaint and all reasonable
inferences that can be drawn therefrom, and view them in the
light most favorable to the non-moving party."  DeBenedictis v.
Merrill Lynch & Co., Inc., 492 F.3d 209, 216 (3d Cir. 2007)
(quotation omitted).  The Court need not, however, "credit either
bald assertions or legal conclusions in a complaint when deciding
a motion to dismiss."  Id. (quotation omitted).  Viewing the
complaint in this manner, the Court must dismiss the complaint if
it fails to state a claim upon which relief can be granted.[1]

---

            [1]    Marriott contends that the Supreme Court's recent
decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955
(2007), raised the notice pleading standard under Rule 8(a), now
requiring enough "[f]actual allegations . . . to raise a right to
relief above the speculative level on the assumption that all of
the complaint's allegations are true."  Id. at 1965.  This
contention is dubious at best.  First, the applicability of

B.   <u>False Advertising Under the Lanham Act</u>

The Lanham Act creates a federal cause of action for certain types of false representations:

> Any person who, on or in connection with any goods or services . . . uses in commerce any . . . name . . . or . . . false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the . . . association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

---

<u>Twombly</u> to non-Sherman Act claims is unknown.  The Supreme Court has not yet applied <u>Twombly</u>'s "above the speculative level" standard outside the antitrust context; however, the Third Circuit has done so at least once.  <u>See</u> <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007) (breach of non-compete covenant claim); <u>see also</u> <u>Mindbridge.com, Inc. v. Testa</u>, No. 06-4985, 2007 WL 2108555 (E.D. Pa. July 19, 2007) (applying <u>Twombly</u> to Lanham Act claim).  Second, although the Supreme Court "retired" the "no set of facts" language in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), it expressly disclaimed altering the scope of the Federal Rules of Civil Procedure.  <u>Twombly</u>, 127 S. Ct. at 1973 n.14; <u>see also</u> <u>United States v. Torkelsen</u>, No. 06-5674, 2007 WL 4245736, at *6 n.2 (E.D. Pa. Dec. 3, 2007) ("Defendants' reliance on [<u>Twombly</u>], for the proposition that the standards for pleading allegations of conspiracy required to survive a motion to dismiss have been significantly altered, is misplaced."); <u>Behrend v. Comcast Corp.</u>, No. 07-219, 2007 WL 2221515, at *5 (E.D. Pa. Aug. 1, 2007) ("[<u>Twombly</u>]--by its own terms--did not impose a heightened pleading standard. . . . [The] standard, the Court specified, did not alter the 'short and plain statement' requirement specified in Rule 8(a)(2).").  The Court need not reach these issues, however, because the allegations in the complaint are sufficient to "raise a right to relief above the speculative level."

3

15 U.S.C. § 1125(a)(1).  Marriott challenges Lewis's Lanham Act
claim for lack of subject matter jurisdiction and failure to
state a claim.

       1.   <u>Subject matter jurisdiction</u>

       The Lanham Act's grant of jurisdiction is limited to
claims alleging false or misleading representations that are used
"in commerce."  15 U.S.C. § 1125(a)(1); <u>see also</u> <u>id.</u> § 1127 ("The
word 'commerce' means all commerce which may lawfully be
regulated by Congress."); <u>Novartis Consumer Health, Inc. v.</u>
<u>Johnson & Johnson-Merck Consumer</u>, 290 F.3d 578, 586 (3d Cir.
2002) (interpreting §§ 1125 and 1127 to refer to "interstate
commerce").  It is well established that "[t]he commerce
requirement has been broadly interpreted." <u>U.S. Healthcare, Inc.</u>
<u>v. Blue Cross</u>, 898 F.2d 914, 922 (3d Cir. 1990); <u>Highmark, Inc.</u>
<u>v. UPMC Health Plan, Inc.</u>, 276 F.3d 160, 165 (3d Cir. 2001)
("Congress's authority under the interstate commerce clause
extends even to purely intrastate activity if that activity
substantially affects interstate commerce." (quoting <u>United</u>
<u>States v. Lopez</u>, 514 U.S. 549, 558-59 (1995))).

       Here, Lewis claims that Marriott's continued
use after his resignation of marketing materials representing
that its wedding packages are catered by "our Chef Carl Lewis" is
a false representation in violation of the Lanham Act.  (Compl. ¶

4

1 & Ex. A.)  Lewis alleges that Marriott "is a worldwide operator
and franchisor of over 2,800 hotels and related facilities," and
that the Marriott hotel where he was formerly employed is located
in Philadelphia.  Id. ¶ 4.  Lewis further alleges that his renown
as a manager and chef extends to the greater Philadelphia area,
id. ¶¶ 8, 13, and that his wedding packages were sought after by
the public due to his reputation, id. ¶ 17.

     Although Lewis's jurisdictional allegations are
general, drawing reasonable inferences in his favor at this
stage,[2] the complaint sufficiently alleges that Marriott used
false representations "in commerce."  It is reasonable to infer
that customers from the greater Philadelphia area--including New
Jersey and Delaware--would plan a wedding at a prominent hotel in
Philadelphia, especially given the alleged extent of Lewis's
renown.  Accord S&C Rest. Corp. v. Sofia's Diner Rest., Inc., No.
98-5972, 1999 WL 627914, at *1 (E.D. Pa. Aug. 18, 1999)
(allegations sufficient to demonstrate false representations used
"in commerce" because, inter alia, "the restaurant is located
next to Interstate 95 and attracts out of state customers" and "a
substantial portion of the food and supplies utilized . . . move

---

     [2]     As with Rule 12(b)(6), where "defendants move to
dismiss a complaint under Rule 12(b)(1) for failure to allege
subject matter jurisdiction we treat the allegations of the
complaint as true and afford the plaintiff the favorable
inferences to be drawn from the complaint."  NE Hub Partners,
L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001).

in interstate commerce").  Therefore, the motion to dismiss for
lack of subject matter jurisdiction will be denied.[3]


### 2.  Failure to state a claim

_____ Marriott next argues that the Lanham Act claim should
be dismissed for failure to state a claim.  Marriott argues that
the complaint fails to allege an essential element of a false
advertising claim under the Lanham Act: that the improperly used
name is a "mark" that is "valid and legally protectable."[4]
Tillery v. Leonard & Sciolla, LLP, 437 F. Supp. 2d 312, 320 (E.D.
Pa. 2006) (citing Opticians Ass'n of Am. v. Indep. Opticians of

---

[3]     The Court has jurisdiction over Lewis's Lanham Act
claim, and thus may exercise supplemental jurisdiction over the
state law claims because they are "so related . . . that they
form part of the same case or controversy."  28 U.S.C. § 1367(a).
Moreover, no other considerations suggest that the Court should
deny supplemental jurisdiction.  Id. § 1367(c).

[4]     The text of § 1125(a), also known as § 43(a) of the
Lanham Act, does not itself require a "valid and legally
protectable mark."  Nonetheless, the Supreme Court has stated:

> The Lanham Act was intended to make actionable the
> deceptive and misleading use of marks and to protect
> persons engaged in commerce against unfair competition.
> . . . [Section] 43(a) . . . protects qualifying
> unregistered trademarks and . . . the general
> principles qualifying a mark for registration under § 2
> of the Lanham Act are for the most part applicable in
> determining whether an unregistered mark is entitled to
> protection under § 43(a).

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68
(1992).  Therefore, Lewis must allege facts sufficient to show
that his name is "protectable" under the Lanham Act.

6

<u>Am.</u>, 920 F.2d. 187, 192 (3d Cir. 1990)).

Lewis premises his Lanham Act claim on the improper use of his name. "Personal names can serve as a trademark," but they "require a showing of 'secondary meaning' in order to be protectable." <u>Id.</u> at 321.

> A personal name acquires secondary meaning as a mark when the name and the business become synonymous in the public mind and the secondary meaning submerges the primary meaning of the name as a word identifying a person, in favor of its meaning as a word identifying that business.

<u>Id.</u> (quotations omitted). Secondary meaning must exist "at the time and place that defendant began use of the mark." <u>Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.</u>, 214 F.3d 432, 438 (3d Cir. 2000). In short, Lewis must allege that the name "Carl Lewis" was synonymous with event planning and catering at the time Marriott began to improperly use it.

Although there is "not yet a consensus as to [the] specific elements" of secondary meaning, the Third Circuit has enumerated certain factors to guide a court's inquiry:

> (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers, and (11) actual confusion.

<u>Commerce</u>, 214 F.3d at 438. The factors enumerated above are "[a] non-exclusive list," <u>id.</u>, and thus the absence of any particular factor does not necessarily require dismissal.

7

Here, the complaint contains several allegations relating to secondary meaning and is sufficient to state a claim for false advertising under the Lanham Act.  Lewis alleges that he "is a well known chef, caterer, and event planner in the Philadelphia area, whose excellent reputation in the food and beverage and event planning industry has been cultivated by a string of successful endeavors in the Philadelphia region as far back as the early 1980's [sic]."  (Compl. ¶ 10.)  Lewis goes on to catalogue his years of experience and success in the industry, describing with particularity his success within the Marriott organization.  Id. ¶¶ 11-19.  Importantly, Lewis alleges that the success of Marriott's wedding packages was due to reliance on his "dynamic personality to market and sell these packages to potential clients" and his "interaction with customers, which, in turn, resulted in [him] gaining significant name recognition in the industry."  Id. ¶ 17.  Lewis alleges that Marriott generated over $2 million in revenue from his wedding packages in 1999, his first year as executive chef, and over $4 million in 2005.  Id. ¶¶ 19-20.  Finally, Lewis alleges that, after his resignation, Marriott copied his name without permission and "customers were misled and will continue to be misled into believing that Carl Lewis is the Executive Chef" for Marriott, id. ¶¶ 23, 25 & Ex A.

The complaint thus alleges a substantial "length of use"--from at least 1999 through 2005--of Lewis's name and a

8

great "extent of sales and advertising leading to buyer association" of his name with event planning and catering, leading in turn to a large "number of sales."  Moreover, Lewis alleges "the fact of copying" and "actual confusion" resulting therefrom.  Therefore, Lewis alleges facts sufficient to show that his name had acquired a secondary meaning by at least 2005, which was before Marriott's allegedly improper use of the name in the summer of 2006.  See Commerce, 214 F.3d at 438.

Marriott argues that the complaint should be dismissed because Lewis "has failed to plead the necessary factors," has relied on "his own subjective opinion that his name is entitled to protection," and because the "words 'secondary meaning' appear nowhere in the Complaint."

Marriott is incorrect.  First, as illustrated above, the complaint contains many allegations pertaining to the Commerce factors determining secondary meaning.  Moreover, the list of factors enumerated in Commerce is non-exclusive, and thus does not require a complaint to allege all the factors listed.

Second, Lewis does not rely only upon his subjective opinion to demonstrate the association of his name with event planning and catering; rather, he describes his lengthy experience in the industry and alleges Marriott's reliance on his interaction with customers to promote wedding packages that were branded with his name.  Because Lewis's wedding packages are

9

alleged to have brought in significant revenue, it is reasonable to infer that his personal marketing was successful with the public and thus created an association between the name "Carl Lewis" and event planning and catering.

Third, the words "secondary meaning" need not appear in the complaint; the complaint need only contain allegations that, in the light most favorable to Lewis, demonstrate the existence of a secondary meaning. First Am. Mktg. Corp. v. Canella, No. 03-812, 2004 WL 250537, at *4 (E.D. Pa. Jan. 26, 2004) (citing City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998)) ("The fact that the Complaint does not use the term 'secondary meaning,' is not dispositive.").

Finally, Marriott attaches the declaration of its Philadelphia General Manager, James Gratton, in an attempt to controvert the allegations of the complaint. Such a declaration is improper in a facial attack on the complaint under Rule 12(b)(6), where the well-pleaded allegations of the complaint are accepted as true. Therefore, the motion to dismiss the Lanham Act claim for false advertising will be denied.

            2.   Unauthorized Use of Name Under Section 8316

Pennsylvania statute creates a cause of action for unauthorized use of name or likeness:

10

> Any natural person whose name or likeness has
> commercial value and is used for any commercial or
> advertising purpose without the written consent of such
> natural person . . . may bring an action to enjoin such
> unauthorized use and to recover damages for any loss or
> injury sustained by such use.

42 Pa. Cons. Stat. § 8316.  Marriott argues that Lewis has failed

to allege that his name has "commercial value."  The term

"commercial value" is defined as "[v]aluable interest in a

natural person's name or likeness that is developed through the

investment of time, effort and money."  Id.

          The allegations discussed above plead commercial value

in the name "Carl Lewis."  Lewis details with particularity the

investment of time from the early 1980s onward that he made in

creating a reputation in the industry.  Further, Lewis describes

the investment of effort and money in promoting and selling his

wedding packages through Marriott.  The revenue figures alleged

by Lewis further support the claim that his investment of effort

has paid off, as evidenced by the commercial success of his

wedding packages.  Therefore, the motion to dismiss the claim for

unauthorized use of name under section 8316 will be denied.[5]

---

[5]     The parties quibble over whether Lewis is entitled to a
presumption of commercial value because Marriott used his name in
advertising material.  See Fanelle v. LoJack Corp., No. 99-4292,
2000 WL 1801270, at *11 (E.D. Pa. Dec. 7, 2000).  As discussed
below, Fanelle concerns the common-law cause of action of
misappropriation of publicity, see id. at 10, and thus does not
create a presumption under Lewis's statutory cause of action.

3.   <u>Misappropriation of Publicity</u>

Under Pennsylvania law, "[a] defendant violates a plaintiff's right of publicity by 'appropriating its valuable name or likeness, without authorization, and using it to defendant's commercial advantage.'" <u>Rose v. Triple Crown Nutrition, Inc.</u>, No. 07-0056, 2007 WL 707348, at *3 (E.D. Pa. Mar. 2, 2007) (quoting <u>World Wrestling Fed'n Entm't Inc. v. Big Dog Holdings, Inc.</u>, 280 F. Supp. 2d 413, 443-44 (W.D. Pa. 2003)). As above, Marriott argues that this claim must fail because Lewis has failed to allege that his name has commercial value.  Even assuming that such an allegation is required,[6] the complaint sufficiently alleges commercial value, and thus the motion to dismiss will be denied.

––––––––––––

[6]   An allegation of commercial value may not be required. <u>See</u> <u>Rose</u>, 2007 WL 707348, at *3 ("He has alleged that defendant used his photograph without authorization and for its own commercial advantage.  This is all that he needed to do to allege a cause of action based on the right of publicity."); <u>Fanelle</u>, 2000 WL 1801270, at *11 ("Inherent in the act of a defendant using a person's name . . . in a commercially advantageous manner is the presumption that the identity has commercial value."). Marriott contends that the presumption of commercial value articulated in <u>Fanelle</u> is unconsidered dicta.  Marriott is incorrect.  In fact, the Court's holding relied on an application of the presumption of commercial value: "I conclude that [the plaintiff] had a right of publicity regarding his name and image. . . .  [A] reasonable jury could find that from a business perspective, LoJack included the <u>Philadelphia Inquirer</u> article with [the plaintiff]'s picture and name because . . . [they] brought a reality and a concreteness to the story that made the article a more powerful advertisement for LoJack, and, therefore, had value for LoJack."  <u>Fanelle</u>, 2000 WL 1801270, at *11.

12

4.   <u>Invasion of Privacy by Misappropriation</u>
     <u>of Identity</u>

The Pennsylvania Supreme Court has expressly recognized
a cause of action for "invasion of privacy" by "appropriation of
name or likeness." <u>Vogel v. W.T. Grant Co.</u>, 458 Pa. 124, 130
(1974).  Subsequently, in 2002, the Pennsylvania legislature
enacted 42 Pa. Cons. Stat. § 8316.  Since then, at least one
district court has stated that the cause of action for invasion
of privacy by misappropriation of identity has been "subsumed" by
section 8316.  <u>See</u> <u>Facenda v. NFL Films, Inc.</u>, 488 F. Supp. 2d
491, 513 (E.D. Pa. 2007).  Relying on <u>Facenda</u>, Marriott argues
here that the invasion of privacy claim should be dismissed.[7]

As a matter of statutory construction, "statutes are
not presumed to make changes in the rules and principles of
common law or prior existing law beyond what is expressly
declared in their provisions." <u>Commonwealth v. Miller</u>, 364 A.2d
886, 887 (Pa. 1976); <u>Jahn v. O'Neill</u>, 475 A.2d 837, 839 (Pa.
Super. 1984) (applying same principle in civil case).  Marriott

---

[7]    At oral argument, counsel for Plaintiff argued that the
Court's interpretation of section 8316 in <u>Facenda</u> should be
disregarded as unconsidered dicta.  To the contrary, the language
used by the Court makes it clear that the interpretation of
section 8316 was necessary to the holding in the case.  <u>See</u>
<u>Facenda</u>, 488 F. Supp. 2d at 513-14 ("In his complaint, Facenda
asserted a cause of action for invasion of privacy. . . .  To the
extent that there was ever a common law cause of action for
[invasion of privacy by] misappropriation of identity, it is
clearly subsumed now by 42 Pa. [Cons. Stat.] § 8316. . . .
[Accordingly,] I will enter judgment on this cause of action in
favor of NFL.").

points to no indicia in the text of section 8316 or its legislative history suggesting that it was intended as an exclusive remedy to replace the common-law cause of action of invasion of privacy by misappropriation of identity, and the Court finds none.

Absent any indicia of such legislative intent, the Court is hesitant to rule that a common-law cause of action that has been expressly recognized by the Pennsylvania Supreme Court has been impliedly subsumed.[8]  See Metro. Prop. & Liab. Ins. Co. v. Ins. Comm'r of Commonwealth, 525 Pa. 306, 310 (1990) ("[A]n implication alone cannot be interpreted as abrogating existing law.  The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded.").  Therefore, in the absence of further guidance from the legislature or Pennsylvania Supreme Court, the motion to dismiss the invasion of privacy claim will be denied.[9]

---

[8]    This hesitancy only grows in light of the paucity of case law interpreting section 8316.  See Tillery, 437 F. Supp. 2d 312; Facenda, 488 F. Supp. 2d at 502 (identifying itself and Tillery as the only published cases citing section 8316).

[9]    Marriott also argues that the invasion of privacy claim must be dismissed because Lewis has failed to allege any commercial value in his name.  See Worthy v. Carroll, No. 02-6882, 2003 U.S. Dist. LEXIS 15647, at *14 (July 17, 2003) ("It is insufficient to simply allege that a book was published and the defendants intended to profit from its publication.  Rather, a plaintiff asserting an [invasion of privacy by] appropriation claim must allege that a defendant used a plaintiff's name or likeness for the express purpose of appropriating the commercial benefit that is particularly associated with the name.").  As

14

III. CONCLUSION

       The motion to dismiss will be denied as to all claims.

An appropriate order follows.

_____

discussed above, Lewis has adequately pled commercial value in
his name, and thus the motion to dismiss will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CARL LEWIS,                          :    CIVIL ACTION
                                     :    NO. 07-3701
          Plaintiff,                 :
                                     :
          v.                         :
                                     :
                                     :
MARRIOTT INTERNATIONAL,              :
INC.,                                :
                                     :
                                     :
          Defendant.                 :


_____ **O R D E R**

          **AND NOW**, this **19th** day of **December, 2007,** for the

reasons stated in the accompanying Memorandum, it is hereby

**ORDERED** that the motion to dismiss (doc. no. 4) is **DENIED.**



          **AND IT IS SO ORDERED.**

                              _S/Eduardo C. Robreno_____
                              **EDUARDO C. ROBRENO, J.**